This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-42056**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**JOSE FABIAN ESTRADA
CARMONA MANCHA,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Richard M. Jacquez, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Lee Green, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Associate Public Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}** Defendant was convicted by a jury on two counts of criminal sexual contact of a minor (child under thirteen years of age) (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1), (C)(1) (2003). At trial, Victim testified that when she was twelve, she got drunk at a park with friends and woke up alone in a trailer home, with no knowledge of how she got there or where she was, wearing different clothes, and with a hickey on her

breast. After trying to charge her phone in a bedroom, Defendant appeared and touched Victim sexually. On appeal, Defendant argues that the State engaged in prosecutorial misconduct and that the evidence did not support the convictions. Because we conclude that the State's comments did not deprive Defendant of a fair trial and that the evidence supported the convictions, we affirm.

**DISCUSSION**

**{2}**     Because this is a memorandum opinion, prepared for the benefit of the parties, we omit a background section and include only those additional facts necessary to convey our analysis. We first address Defendant's prosecutorial misconduct argument and second, the sufficiency of the evidence.

**I.     Prosecutorial Misconduct**

**{3}**     Because Defendant did not object to any of the statements he challenges on appeal, we review those statements only for fundamental, rather than reversible, error. *See State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348 (defining the standard for reversible error in prosecutorial misconduct cases); *see also id.* ¶ 37 (noting that under the fundamental error standard, "we begin with the presumption that the verdict was justified, and then ask whether the error was fundamental"). The *Sosa* Court set forth three guidelines to evaluate whether improper statements required reversal, *see id.* ¶ 26, while emphasizing that "the common thread running through the cases finding reversible error is that the prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial," *id.* ¶ 34; *see State v. DeGraff*, 2006-NMSC-011, ¶ 21, 139 N.M. 211, 131 P.3d 61 ("An error is fundamental if there is a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." (internal quotation marks and citation omitted)). We first consider the alleged improprieties for error and then assess whether the improprieties amount to fundamental error.

**{4}**     Defendant argues that four categories of statements by the prosecutor amounted to prosecutorial misconduct: the prosecutor (1) described Defendant's actions as a plan (the plan references); (2) argued that Victim was "worthy" of the jury's trust (the worthy statement); (3) referred to Defendant as a predator ten times (the predator statements); and (4) on multiple occasions, highlighted Victim's vulnerability, history of sexual abuse, and attempt to commit suicide that occurred before the incident (the vulnerable statements). Considered in context, the first two categories of statements made by the prosecutor were not improper but the second two categories of statements were.

**{5}**     The plan references and the worthy statement were not improper under the facts of this case. As to the former, the State argued that Defendant's actions were not the product of an "accident" but instead the results of a "plan" that "was never finished," and used the term "plan" multiple times. Defendant argues that the plan references did not stem from any evidence, but the State made this argument to the jury in relation to

specific evidence that Defendant took advantage of an unconscious young girl, left saliva on her breast, did not let her go home, again touched her sexually when she awoke, and was interrupted before things could progress further. *See State ex rel. Schiff v. Madrid*, 1984-NMSC-047, ¶ 14, 101 N.M. 153, 679 P.2d 821 ("Counsel are generally given wide latitude in commenting upon the evidence in closing arguments."). Our review of the record reveals the State's references to Defendant having a plan of some sort are "within the permissible range of arguments" because they contained "conclusions and inferences reasonably drawn from the facts and circumstances." *See State v. Duffy*, 1998-NMSC-014, ¶ 58, 126 N.M. 132, 967 P.2d 807 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

{6}     The worthy statement was similarly within permissible bounds. "Prosecutors are permitted to comment on the veracity of witnesses so long as the statements are based on the evidence—not personal opinion—and are not intended to incite the passion of the jury." *State v. Dominguez*, 2014-NMCA-064, ¶ 23, 327 P.3d 1092. In context, the prosecutor's statement in closing that Victim "is worthy of her credibility; she is worthy of your trust" was made immediately before reviewing Victim's testimony and Defendant's direct challenges to her credibility, which suggests the statement was not the personal opinion of the prosecutor but rather an argument relating to evidence and Defendant's contrary suggestions during trial. The worthy statement therefore appropriately "focused on specific indicators presented to the jury throughout the trial as evidence of the truthfulness of Victim's account." *See id.* ¶ 24.

{7}     The predator statements and vulnerability statements were, however, improper. The State argues that the statements—made by the prosecutor during both opening and closing arguments—were justified because the evidence supported a conclusion that Defendant was a predator, because Defendant passed up many opportunities to help the particularly vulnerable Victim and instead "acted in a predatory fashion by sexually exploiting a troubled, intoxicated pre[]teen." The State contends that the term "predator" was used to "describe[] Defendant's choice in relation to [Victim's] vulnerability," and was "not a free-floating character trait divorced from the evidence." No evidence, however, demonstrated that Defendant knew Victim before the incident and took advantage of her particular circumstances in order to sexually assault her. The State commented on far more than the conditions that Defendant could have knowingly manipulated—selecting Victim based upon her age, her inebriation, or her isolation when she woke up alone in the trailer. Victim's emotional condition and prior unrelated hardships were not relevant to these convictions and served only to emphasize the emotional impact of the evidence. *See State v. Ashley*, 1997-NMSC-049, ¶ 15, 124 N.M. 1, 946 P.2d 205 ("Evidence which improperly appeals to the passions and prejudices of the jury should be excluded."). Similarly, the prosecutor's use of the term "predator," repeatedly and often throughout the arguments "was unnecessary and improper." *See State v. Lozoya*, 2017-NMCA-052, ¶ 37, 399 P.3d 410 (criticizing a "prosecutor's clear attempt to portray [the d]efendant as a sexual predator").

**{8}** Despite the impropriety of these statements, context remains "paramount." *See Sosa*, 2009-NMSC-056, ¶ 34. Defendant and Victim were not previously acquainted. Victim testified that she blacked out from drinking and awoke alone on a couch with a hickey on her breast. A short time after, a person whom Victim identified as Defendant lay down with her and rubbed her clitoris for three minutes. Later, the police investigation identified the place where Victim awoke as Defendant's trailer, and a DNA test connected swabs taken from Victim's breast to Defendant's saliva. The defense strategy leaned into Victim's vulnerability by focusing on her depression, confusion, and inconsistency.

**{9}** In this context, Defendant's guilt was not so doubtful that the improper statements shock the conscience and that "the fundamental integrity of the judicial process" was implicated. *See id.* ¶ 35 (describing the fundamental error standard); *DeGraff*, 2006-NMSC-011, ¶ 16 ("Where comments by a prosecutor encourage a jury to base its decision on improper grounds, we consider whether this misconduct denied the defendant a fair trial."). The prosecutor's statements attempted to fill the gaps in Victim's memory—how Victim came to be in Defendant's trailer and what happened to her while she was passed out. But to do that, the prosecutor used insinuations that risked vilification of Defendant. On the one hand, the statements were repeated, somewhat pervasive, and were not responsive to any argument by Defendant because the statements began in opening argument. *See Sosa*, 2009-NMSC-056, ¶¶ 29, 33 (explaining two of the three reversible error guidelines—whether the statement was brief and isolated and whether the statement was invited). One the other hand, neither improper statement invaded any constitutional protection, *see id.* ¶ 27 (noting a higher likelihood of reversal if the statement "invades a distinct constitutional protection"), and the jury was instructed that they were the sole judges of the facts and that "what is said in closing arguments is not evidence," *see* UJI 14-104 NMRA; UJI 14-5020 NMRA. The improper comments did not make Victim any more believable—both parties emphasized her fragile state. As a result, the improper comments did not undermine the defense strategy or bolster any other evidence. They were improper, unnecessary comments, but in light of the other evidence of guilt, the context of the statements, and the lack of preservation, "we decline to take the extraordinary action of upsetting the jury's verdict." *See Sosa*, 2009-NMSC-056, ¶ 41.

## II.     Sufficiency of the Evidence

**{10}** Defendant also argues that the evidence did not support the convictions. We view the evidence "in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (alterations, internal quotation marks, and citation omitted). From this viewpoint, we conclude that Victim's testimony, corroborated in many respects by the testimony of other witnesses, together with the DNA test results, was sufficient to establish "the essential facts for conviction." *See State v. Barrera*, 2002-NMCA-098, ¶ 8, 132 N.M. 707, 54 P.3d 548.

**{11}** The State was required to establish that Victim was under thirteen years old and that Defendant "touch[ed] or applied force to" Victim's unclothed breast and vulva. *See* UJI 14-925 NMRA (setting forth the elements of CSCM in the second and third degree); UJI 14-981 NMRA (defining "vulva" to include the clitoris). As we have set forth, Victim testified that after an evening of consuming alcohol with friends at a park, she awoke on a couch in an unknown trailer home with a new hickey-like bruise on her breast, identified Defendant as the person who touched her clitoris after she regained consciousness, and described the circumstances of that touching. Victim's breast was later swabbed, the sample was tested, and the DNA results matched Defendant's saliva. Although Defendant first denied any knowledge of Victim, he later acknowledged that she had been in the trailer and claimed that he was injured protecting her. This evidence supported the jury's verdicts that Defendant committed CSCM by touching Victim's unclothed breast and her vulva.

**{12}** Defendant argues that this evidence was insufficient because Victim had memory lapses, her impressions did not align exactly with the corroborating evidence, other sexual incidents could have confused her while she was intoxicated, and the jury could have drawn different conclusions about the DNA evidence. We disagree. Law enforcement corroborated Victim's description of Defendant's trailer home, a damaged vehicle in the front yard, and a reptile kept in a cage inside one of the rooms of the trailer—even though the reptile was a snake and not an iguana as Victim remembered. In describing her exit from the trailer, Victim stated that a second man engaged Defendant in a fight, that she twisted her ankle while running away, and that she saw the second man hit Defendant with what she thought was a shovel. The ankle injury and bruising on Victim's breast was observed by a nurse. Meanwhile, Defendant had also called the police to report an unprovoked attack in his home by unknown assailants, during which he was hit with a rake. Defendant explored his view of the evidence in cross-examination and in argument to the jury, and it was for the jury to weigh and resolve any inconsistencies. *See State v. Little*, 2020-NMCA-040, ¶ 9, 473 P.3d 1 (explaining that inconsistencies in testimony provided "no basis to reverse on sufficiency grounds because it is the exclusive province of the jury to resolve the factual inconsistencies in a witness's testimony" (alteration, internal quotation marks, and citation omitted)). Our role on appeal is to determine whether any evidence supports the verdict, not whether evidence could have supported a contrary result. *See State v. Maxwell*, 2016-NMCA-082, ¶ 57, 384 P.3d 116 ("[T]he question is not whether substantial evidence would have supported an opposite result but whether such evidence supports the result reached." (internal quotation marks and citation omitted)). We therefore do not second-guess the jury's view of the evidence and conclude that the evidence supported the verdicts.

**CONCLUSION**

**{13}** We affirm.

**{14} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**J. MILES HANISEE, Judge**